■ ROBERT A. ANDERSON et al., Respondents, v BETH ISRAEL MEDICAL CENTER et al., Appellants. [819 NYS2d 241]—

Order, Supreme Court, New York County (Eileen Bransten, J.), entered March 3, 2005, which denied defendants' motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

---

Plaintiff Robert A. Anderson underwent an operation for a sinus condition at defendant Beth Israel Medical Center; defendant William J. Book, M.D., served as the anesthesiologist. After the surgery, plaintiff was diagnosed with a blood clot in his left arm and shoulder. Plaintiff's complaint alleged that the blood clot developed as the result of certain actions by Dr. Book that allegedly constituted malpractice. As here relevant, the complaint alleged that Dr. Book had placed a blood pressure cuff on plaintiff's left arm, which allegedly was contraindicated due to the presence of a preexisting peripherally inserted central catheter (PICC) line in the left arm. The complaint further alleged that this alleged departure from applicable standards of practice proximately caused the blood clot to develop.[1]

At their depositions, Dr. Book and Terry Collymore, R.N., a nurse who had assisted at the operation, testified, based on their review of the medical records, that, contrary to the allegations of the complaint, the blood pressure cuff had been placed on plaintiff's right arm. Plaintiff, on the other hand, admitted at his deposition (conducted on April 21, 2004) that, due to the effects of anesthesia, he could not remember whether the blood pressure cuff had been placed on the left arm or the right arm. Plaintiff did claim to "believe" the cuff had been placed on the left arm because "the left side of the table was prepared with the armrest." However, when asked whether the cuff had been placed "while you were alert," plaintiff responded: "I don't really remember." Subsequently, plaintiff testified as follows concerning what he could remember about what Dr. Book did on his left arm:

"Q. Why don't you tell us what he [Dr. Book] did on the left arm before you became unconscious?

"A. I would assume that he put—no, I didn't stand there and stare at the guy, now. I am laying [sic] on the table, waiting for surgery, and I am kind of, you know—

"[Plaintiff's counsel]: The question that you are being asked, since you were there, you can only be asked what you know, what you saw, obviously, what you know, your being there. What exactly did Dr. Book do to your left arm while you were in the operating room? Is that a fair question?

"Q. From your own knowledge, before you lost consciousness.

"[Plaintiff's counsel]: No assuming as to what you saw.

---

1. Although the complaint alleged certain other departures by defendants (specifically, placement of an intravenous line in the left arm, and failure to adequately monitor the flow of intravenous fluids into the left arm), it is undisputed that no triable issue remains as to these matters.

"A. *I don't know.*

"Q. What did he do on your left arm?

"A. *He worked on my left arm. That's all. Whatever he was doing. That's all.*

"Q. When you say he worked on your left arm, prior to your becoming unconscious, what did he do to your left arm, to your knowledge?

"A. I have to use the word assume. You don't like the word assume.

"Q. It's not that I don't like it. It's inappropriate for a deposition. There is what you know from your own knowledge, from your own perception, from your eyes, ears, nose, et cetera.

"[Plaintiff's counsel]: What did you feel, see or hear? That's all you are being asked. If you don't know the answer, say you don't know.

"A. *I don't remember exactly what he was doing.*" (Emphasis added.)

In support of their motion for summary judgment, defendants submitted the affirmation of Dr. Sheldon H. Deluty, a board-certified anesthesiologist. Dr. Deluty based his opinion on his review of the relevant medical records and of the deposition testimony of plaintiff, Dr. Book, and Nurse Collymore. With regard to placement of the blood pressure cuff, Dr. Deluty opined that such placement had been "in accordance with standard anesthesia practice." The basis for this conclusion was the uncontroverted evidence that the cuff had been placed on plaintiff's right arm. Dr. Deluty did not express an opinion as to whether it would have been acceptable to place the cuff on the left arm. This omission is understandable, given that, as of the time Dr. Deluty's affirmation was prepared, there was no admissible evidence, even in plaintiff's deposition, that the cuff had been placed on plaintiff's left arm.

Plaintiff's entire opposition to the summary judgment motion consisted, in substance, of his own affidavit changing the testimony he had given at his deposition. In his affidavit, dated November 2004, plaintiff stated:

"5. The fact is that I am now stating to the Court under oath in response to this motion that the aforesaid blood pressure cuff was placed on my left arm, the same arm that contained the already existing PICC line without any doubt in my mind and therefore, your deponent would respectfully submit this Court should deny Defendants' summary judgment motion.

"6. That your deponent distinctly remembers having the blood pressure cuff placed on my left arm prior to surgery . . . . There

is absolutely no doubt in my mind on this issue. This is not just 'mere speculation' as Defendants' counsel suggests, it is a fact.

"7. That your deponent has reviewed the transcript of my deposition testimony taken on April 21, 2004. Simultaneous with the serving of these opposition papers to Defendants' motion, your deponent has also executed a document correcting some of the answers given by your deponent at the aforesaid deposition which corrections re-affirm your deponent's first hand recollection of the events, namely that Defendants placed the blood pressure cuff on my left arm at the May 23, 2000 surgery."

Plaintiff did not explain what it was, in the approximately seven months between the taking of his deposition and the preparation of his affidavit, that refreshed his memory of what Dr. Book did on his left arm before the anesthesia took effect.[2] Neither did plaintiff submit an expert affirmation opining that, if the cuff had been placed on his left arm, this would have constituted malpractice, or that doing so could have caused the subsequent blood clot.

In reply, defendants submitted a supplemental affirmation by Dr. Deluty opining that, even if the cuff had been placed on plaintiff's left arm, "[p]lacement of a blood pressure cuff on the same arm as a PICC line does not constitute a recognized deviation from accepted standards." In addition, Dr. Deluty refuted plaintiff's theory that placement of the cuff on the same arm as the PICC line could have caused plaintiff's subsequent blood clot. These opinions, like the remainder of Dr. Deluty's opinions, are not contradicted anywhere in the record.

The IAS court denied defendants summary judgment based on its view that, by submitting in reply their expert's opinion that placement of the cuff on the left arm would have been acceptable medical practice, defendants had "raise[d] new arguments to which plaintiffs never had an opportunity to respond." This was error. Defendants were entitled to submit their expert's supplemental expert affirmation with their reply papers in response to the blatant change of plaintiff's deposition testimony in his opposition affidavit.

To reiterate, while the complaint alleged that the blood pressure cuff had been placed on the left arm, plaintiff's subsequent deposition (before it was "corrected" seven months later) utterly failed to yield any evidence to support this contention.

---

2. For example, plaintiff did not explain what caused him to change his answer at the end of the excerpt of his deposition testimony set forth above from "I don't remember exactly what he was doing," to "I don't remember exactly what he was doing *except I remember specifically his placing the blood pressure cuff on my left arm.*"

Further, it is undisputed that all of the other relevant evidence available when the motion was made indicated that the cuff was placed on the right arm. Given the complete absence, at the time defendants moved for summary judgment, of any admissible evidence to support the theory that the cuff was placed on the left arm, defendants' moving papers were not deficient in omitting an expert opinion on the propriety of placing the cuff on the left arm (cf. Migdol v City of New York, 291 AD2d 201 [2002] [in denying summary judgment motion, affidavit submitted in reply "was properly rejected by the motion court since it sought to remedy . . . basic deficiencies in (the movant's) prima facie showing rather than respond to arguments in plaintiff's opposition papers"]).

In response to defendants' initial showing that they were entitled to judgment as a matter of law under the only set of facts for which admissible evidence was available at the time the motion was made, plaintiff flagrantly changed his testimony to claim he had a specific recollection of something he previously had admitted he could not remember, i.e., that the cuff had been placed on his left arm. This had the effect of creating a triable issue as to which arm the cuff had been placed on, an issue that had not existed when defendants served their motion. It was in response to this new evidence that defendant submitted additional expert evidence opining that, even assuming the accuracy of plaintiff's mysteriously recovered memory, defendants had not committed any malpractice, and could not have caused plaintiff's injury. Defendants had every right to submit this evidence with their reply papers (see Ticor Tit. Guar. Co. v Bajraktari, 261 AD2d 156, 157 [1999] [on motion for summary judgment, motion court properly considered reply affidavit that "merely responded" to arguments made in opposition]).

We reject the IAS court's statement that plaintiff "never had an opportunity to respond" to Dr. Deluty's supplemental affirmation. Since plaintiff's opposition to the motion, by changing his deposition testimony, revived a previously dead issue of fact, he cannot claim to have been unfairly surprised when defendants responded by submitting expert evidence that, whichever arm the cuff was placed on, defendants had acted properly and were not responsible for the subsequent blood clot. It should have been obvious that this was defendants' likely response to plaintiff's change of his testimony, and, if an expert could be found to opine that placing the cuff on the left arm was malpractice, there was nothing to prevent plaintiff from including an opinion to that effect in his opposition papers. Accordingly, since plaintiff does not offer any expert evidence to demonstrate

that placing the cuff on either the left or the right arm would have been a deviation from accepted standards of medical care, defendants are entitled to summary judgment (*see e.g. Oates v New York Hosp.*, 131 AD2d 368, 370 [1987]). Concur—Tom, J.P., Friedman, Nardelli, Sweeny and Malone, JJ.