■ JOSEPH VALENTI et al., Respondents, v MARTIN CAMINS, M.D., et al., Appellants. [943 NYS2d 504]—

Order, Supreme Court, New York County (Joan B. Lobis, J.), entered on or about November 3, 2010, which, insofar as appealed from as limited by the briefs, denied the branch of the motion of defendants, Martin Camins, M.D., and Mt. Sinai Medical Center, for summary judgment dismissing the medical malpractice cause of action, affirmed, without costs.

On April 11, 2006, defendant Dr. Martin Camins performed surgery upon plaintiff Joseph Valenti's cervical spine at defendant Mt. Sinai Medical Center. Plaintiff had previously been diagnosed with a disc herniation at the C4-C5 level with severe canal stenosis and spinal cord compression, degenerative changes with canal stenosis at the C5-C6 level as well as an increased signal at the T2 level of the spinal cord. These spinal abnormalities had caused plaintiff to experience numbness and pain on the left side of his body, his face and his penis, and an inability to obtain an erection. During the surgery, defendant Dr. Camins performed cervical diskectomies at C4-C5 and C5-C6, and a C5 vertebrectomy with placement of a cervical cage and plate. Dr. Camins secured the plate by inserting two 13mm screws.

Two months after the surgery, plaintiff continued to feel some pain in the area of his throat. Dr. Camins ordered a follow-up X ray of plaintiff's cervical spine. The report interpreting the X ray was prepared by Dr. Michael Rothman on June 12, 2006, and stated that "[plaintiff] is soft tissue ACDF, plate and screw fixa-

tion from C4 through C7 with an intervening metallic cage and partial corpectomies at C5 and C6 . . . The superior screws overlie the inferior C4 vertebral body. The inferior screws appear to overlie the C6-7 disc space. The exact position is uncertain and correlation with CT scan is suggested." Three days later, Dr. Camins wrote a letter to Dr. Mahesh Chhabria, plaintiff's neurologist, which stated that "[o]n June 12, 2006, a routine cervical spine radiograph was performed to assess [plaintiff's] cervical spine hardware. It appears that at the C7 level the screws are backing out. In view of that, I have recommended that we take the patient to the operating room suite to re-position his plate and screws." The corrective surgery was performed, in two stages, on June 27, 2006. The operative report for the first stage stated that "[a]fter the previously placed plate had been visualized, it was obvious that there was screw back out at the C7 level."

Plaintiff commenced this action seeking damages for medical malpractice and lack of informed consent. In his bill of particulars, plaintiff claimed that Dr. Camins was negligent in, inter alia, his "improper placement of orthopedic hardware." The bill did not specify where such hardware was allegedly improperly placed. At Dr. Camins' deposition, however, plaintiff's counsel asked him multiple questions about the fact that the X ray report from Dr. Rothman referred to the C7 level. Counsel also asked numerous questions about defendant's own letter to Dr. Chhabria, as well as the operative report regarding the first stage of the second surgery. Both of these documents indicated that there was a screw back out at the C7 level. Dr. Camins acknowledged the references to C7, but contended that this was a mistake, and that the documents should have stated C6.

Plaintiff also took the deposition of nonparty Dr. Harshpal Singh, who assisted Dr. Camins in the second surgery. Dr. Singh was asked a multitude of questions about the precise placement of the screws during the first surgery. He acknowledged that the operative report for the second surgery stated that a screw had been placed at the C7 level. However, he also surmised that this was a typographical error because the operative report for the first surgery did not indicate that a screw had been placed there.

At the close of discovery, defendants moved for summary judgment. They supported the motion with the affirmation of Douglas Cohen, M.D., a spinal surgeon. Dr. Cohen reviewed the records regarding Camins's diagnosis of plaintiff and the two surgeries he performed on plaintiff. He opined that Dr. Camins properly obtained plaintiff's informed consent. He also stated that everything Camins had done was in accordance with good

and accepted medical and surgical practice. Further, he asserted that screw back out is a well-known and accepted complication of cervical spinal fusion surgery that can occur even with proper surgical technique and appropriate selection and placement of a cervical plate and screws. Dr. Cohen did not discuss where Camins placed the screws and whether such placement necessitated the second surgery. However, he did state in a footnote that, according to Dr. Camins's deposition testimony, the reference to the C7 level in the operative report from the second surgery was a typographical error.

In opposition, plaintiff submitted the affirmation of an unidentified orthopedist. The orthopedist contended that Dr. Camins's malpractice lay in his having placed a screw at the C7 level. He referred to Camins's own records to establish that a screw was placed there. The doctor did not make any reference to plaintiff's informed consent claim.

Defendants submitted a reply affirmation from Dr. Robert Schneider, a radiologist. Dr. Schneider averred that, contrary to the statement by plaintiff's expert, the C-7 vertebral body was not operated on during plaintiff's April 11, 2006 first surgery, as the lower cervical plate screw was positioned into the C-6 vertebral body and did not overlie the C6-C7 disc space. He annexed to his affirmation a copy of an X ray of plaintiff's cervical spine taken after plaintiff's first operation, which he interpreted as showing an anterior plate with screws at the C-4 and C-6 levels, and none at the C7 level. He opined that the screws were in good position without any evidence of displacement. Dr. Schneider also stated that a spinal X ray taken before the second surgery showed that the lower screws were secured into the C-6 vertebral body in the proper position, but had backed out.

The motion court denied defendants' motion for summary judgment. The court found that Dr. Cohen's affirmation was sufficient to make a prima facie showing of entitlement to summary dismissal of the malpractice claim. However, it also determined that the affirmation of plaintiff's expert created an issue of fact by stating that there was evidence that a screw had been misplaced during the original surgery. The court rejected Dr. Schneider's reply affirmation as "new evidence," and accordingly refused to consider it. In any event, the court stated, defendants' reply only "underscore[d the] conflict" concerning the placement of screws. The court dismissed plaintiff's informed consent claim.

Defendants argue on appeal that plaintiff's theory of liability, based on Dr. Camins's having placed a screw in the wrong position, was raised for the first time in opposition to the summary

judgment motion and took them by surprise. Defendants assert that the allegation in plaintiff's bill of particulars regarding the "improper placement of orthopedic hardware" was too vague to have placed them on notice that plaintiff believed that Dr. Camins inserted a screw at the wrong level of plaintiff's cervical spine. Accordingly, defendants contend, they had no choice but to submit Dr. Schneider's affirmation in reply, since they could not have done so when they submitted their moving papers.

We disagree. Plaintiff's bill of particulars, by itself, may have been too undefined to apprise defendants that plaintiff believed Dr. Camins to have committed malpractice by placing a screw at the C7 level of the cervical spine. However, a party may raise even a completely unpleaded issue on summary judgment so long as the other party is not taken by surprise and does not suffer prejudice (*see Rosario v City of New York*, 261 AD2d 380 [1999] [permitting the defendant to move for summary judgment on basis of unpleaded defense]). Here, there was no surprise because the question of precisely where Dr. Camins originally placed the screws that backed out was clearly identified as an issue at the depositions of Dr. Camins and Dr. Singh. Plaintiff's counsel asked numerous questions at the depositions regarding the issue. For defendants to now argue that they did not consider the place where the backed-out screw was originally inserted to be a part of plaintiff's theory of liability is simply disingenuous. Indeed, in light of this, we depart from the motion court to the extent it found that defendants met their prima facie burden on their summary judgment motion. In order to have done so, defendants would have had to directly address each and every element of the claimed malpractice (*see Wasserman v Carella*, 307 AD2d 225, 226 [2003]). Since it was obvious, at the time defendants moved for summary judgment, that plaintiff believed Dr. Camins to have committed malpractice by placing a screw in the wrong place, the issue became part of defendants' prima facie burden. Because defendants did not address it, the burden never shifted to plaintiff to raise an issue of fact.

In any event, defendants' own submissions in support of the motion for summary judgment establish that there are issues of fact precluding such relief. Three documents, two of them prepared by Dr. Camins himself, state clearly that a screw was placed at the C7 level. Defendants consistently attributed the references to C7 as "misstatements." This may be true. However, it raises a factual question that may only be resolved by a jury (*see Bradley v Soundview Healthcenter*, 4 AD3d 194 [2004]).

The dissent, in arguing that defendants could not have anticipated the theory advanced by plaintiff's expert in opposition to the summary judgment motion, focuses primarily on the pleadings. Again, the key is not what is in the pleadings, but whether the moving party was surprised or prejudiced (*see Rosario* at 380). The bill of particulars may not have specified how Dr. Camins engaged in the "improper placement of orthopedic hardware." However, by repeatedly questioning Dr. Camins at his deposition regarding the placement of a screw at the C7 level, plaintiff undoubtedly placed him on notice that the possible mislocation of the screw was a central concern that defendants would be required to address at the summary judgment stage. Accordingly, the dissent's reliance on *Feliciano v New York City Health & Hosps. Corp.* (62 AD3d 537 [2009]), in which the theory of liability raised in opposition to summary judgment was, unlike here, truly "new," is inapposite. Moreover, the dissent completely disregards the unavoidable fact that the record contains more than one statement from Dr. Camins himself that he placed a screw at a location which was not medically indicated.

Based on the foregoing, defendants were required to demonstrate affirmatively that the screw which backed out was not misplaced during the first surgery. This would have included, as part of their prima facie case, submitting the radiologist's affirmation that was only first submitted in reply. Because defendants did not address the issue in their moving papers, the burden never shifted to plaintiff to submit evidence establishing the existence of an issue of fact. In any event, it cannot be ignored that the record contains more than one statement from Dr. Camins himself that he placed a screw at a location which was not medically indicated. At the very least, this discrepancy in the record creates an issue of fact that precludes summary judgment, and which could not have been cured by defendants' submission in reply. Concur—Mazzarelli, J.P., DeGrasse, Abdus-Salaam and Román, JJ.

Catterson, J., dissents in a memorandum as follows: Because I believe that the motion court erred in failing to consider evidence submitted by the defendants in reply, I must respectfully dissent. The defendants argue that the motion court erred by not considering the new evidence they submitted on reply—Dr. Schneider's affirmation and the April 12, 2006 X ray attached thereto—because the newly submitted evidence responded to arguments and a theory of liability first raised in the plaintiff's opposition papers. In my view, they are entirely correct. Moreover, contrary to the majority's view, the record clearly shows,

as set forth more fully below, that the defendants were taken by "surprise" by the plaintiff's new claim that defendants committed malpractice by placing a screw at the C7 instead of the C6 level of the cervical spine. Thus, in my opinion, they were not obliged to address that issue in their moving papers.

"The function of reply papers is to address arguments made in opposition to the position taken by the movant and not to permit the movant to introduce new arguments in support of, or new grounds for the motion." (*Dannasch v Bifulco*, 184 AD2d 415, 417 [1st Dept 1992].) Courts have generally employed this rule "in the context of summary judgment motions to prevent a movant from remedying basic deficiencies in its prima facie showing by submitting evidence in reply, thereby shifting to the nonmoving party the burden of demonstrating the existence of a triable issue of fact at a time when that party has neither the obligation nor opportunity to respond." (*Matter of Kennelly v Mobius Realty Holdings LLC*, 33 AD3d 380, 381 [1st Dept 2006]; *see also Sanford v 27-29 W. 181st St. Assn.*, 300 AD2d 250, 251 [1st Dept 2002].)

In this case, the plaintiff's opposition to the summary judgment motion included a claim, raised for the first time in the affidavit of an orthopedic surgeon, that the defendants departed from the standard of care by placing a screw in the C-7 vertebral body instead of the appropriate C-6 vertebral body. The plaintiff argues that his claim that screws were improperly placed at the C-7 level was not raised for the first time in his opposition papers as his bill of particulars alleged that the defendants had improperly placed the orthopedic hardware during the initial operation. This is incorrect. In his bill of particulars, the plaintiff merely claimed that there was "improper placement of orthopedic hardware." This could mean anything from simple bad technique in inserting the screws and plates during the surgery to an entirely different claim of using the wrong hardware for the particular procedure.

Indeed, the majority concedes that the "[p]laintiff's bill of particulars . . . may have been too undefined to apprise defendants that plaintiff believed Dr. Camins to have committed malpractice by placing a screw at the C7 level." Our recent decision in *Feliciano v New York City Health & Hosps. Corp.* (62 AD3d 537 [1st Dept 2009]), therefore mandates reversal here. (*See also Anderson v Beth Israel Med. Ctr.*, 31 AD3d 284 [1st Dept 2006].) In *Feliciano*, this Court concluded that the defendants' expert physician's affirmation, submitted in reply to the plaintiff's opposition, was appropriate because the defendants' arguments could not have been submitted at an earlier juncture

due to the indefiniteness of the plaintiff's initial pleading. (*See Feliciano*, 62 AD3d at 538.)

Nevertheless, the majority holds that this claim was no "surprise" to the defendants because the issue was clearly identified at the depositions of Dr. Dr. Camins and Dr. Singh. Therefore, the majority concludes the defendants should have addressed the issue as part of their prima facie burden "[s]ince it was obvious, at the time [the] defendants moved for summary judgment, that [the] plaintiff believed Dr. Camins to have committed malpractice by placing a screw in the wrong place."

In my opinion, the record is devoid of any evidence that would support such a conclusion. Instead, the majority's assumption begs the question of why the defendants would wait to supply the April 12 X ray and expert affidavit with their reply papers if it was truly "obvious" to them that the issue was placement of the screw at the C7 level.

Rather, what appears obvious in the deposition of nonparty Dr. Singh is that the April 12 X ray produced for his inspection settled the "numerous questions" asked as to the possible placement of the screws in the C7 vertebra during initial surgery. Dr. Singh's reply at deposition was unequivocal, and in the context of the questioning it is apparent that he—and plaintiff's counsel—believed the issue to be settled as follows:

"Q [plaintiff's counsel]: Can you tell me does that x-ray depict the hardware and screws that were placed by Dr. Dr. Camins [during the plaintiff's first surgery]?

"A: Yes.

"Q: Can you tell me what vertebral bodies are accommodating the screws as is depicted in that x-ray?

"A: The C4 vertebral bodies [*sic*] is accommodating screws and the C6 vertebral body is accommodating screws."

After asking Dr. Singh to mark vertebra C1 on the X ray, plaintiff's counsel concluded the deposition. Similarly, the transcript of Dr. Dr. Camins's deposition fails to show that the defendants were on notice of the plaintiff's claim. Rather, defendant Dr. Camins was made aware of an apparent discrepancy between his testimony and the radiologist's report (which alluded to placement of screws at C7, and placement to "overlie the C-6, C-7 disk space"). Defendant Dr. Camins dismissed this as a typographical error or inaccurate statement. He further testified repeatedly that he did not routinely use the word "overlie" so he could not explain what it meant for a screw to "overlie a space."

In any event, the record clearly supports the view that had

the defendants believed that the plaintiff's malpractice claim alleged the misplacement of screws at C7 there would have been no reason whatsoever for the defendants not to produce the April 12 X ray and June 28, 2006 X rays with their moving papers. Here, the fact that they did not do so can be clearly interpreted to mean that they were not on notice of the plaintiff's C-7 misplacement claim. Even a perfunctory comparison of the X rays in the record shows that the screws were moved to the C7 level during the corrective surgery on June 28, 2006, and therefore production of the X rays and the affidavit would have easily satisfied the defendants' prima facie burden in moving for summary judgment.

Thus, I believe that the motion court should be reversed and the matter remanded for reconsideration of the motion including the evidence submitted by defendants in reply.