Lopez v Millard Fillmore Suburban Hosp. (2026 NY Slip Op 01688)

Lopez v Millard Fillmore Suburban Hosp.

2026 NY Slip Op 01688

Decided on March 20, 2026

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 20, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., CURRAN, BANNISTER, OGDEN, AND DELCONTE, JJ.

835 CA 24-01839

[*1]DANIEL LOPEZ, PLAINTIFF-RESPONDENT,
vMILLARD FILLMORE SUBURBAN HOSPITAL, ET AL., DEFENDANTS, TIMOTHY M. ADAMS, M.D., AND DELAWARE SURGICAL ASSOCIATES, DEFENDANTS-APPELLANTS. 

RICOTTA, MATTREY, CALLOCCHIA, MARKEL & CASSERT, BUFFALO (COLLEEN K. MATTREY OF COUNSEL), FOR DEFENDANTS-APPELLANTS.
LOTEMPIO P.C. LAW GROUP, BUFFALO (JAMES J. CASSAR OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 

 Appeal from an order of the Supreme Court, Erie County (J. David Sampson, A.J.), entered August 23, 2024. The order denied the motion of defendants Timothy M. Adams, M.D., and Delaware Surgical Associates for summary judgment dismissing the complaint against them. 
It is hereby ORDERED that the order so appealed from is affirmed without costs.
Memorandum: Plaintiff commenced this medical malpractice action seeking damages for injuries he allegedly sustained in his lower left leg after undergoing gastrointestinal surgery performed by Timothy M. Adams, M.D. (defendant). According to plaintiff's complaint, bill of particulars, and supplemental bill of particulars, defendant and Delaware Surgical Associates (collectively, defendants) failed "to properly monitor the [p]laintiff during the surgical procedure" and failed "to properly reposition the [p]laintiff during the surgery[ and] take precautions or actions to maintain circulation," and as a result plaintiff sustained compartment syndrome of his left leg. Defendants moved for summary judgment dismissing the complaint against them. Supreme Court denied the motion, and defendants appeal. We affirm.
"[A] defendant moving for summary judgment in a medical malpractice action has the [initial] burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby" (Bubar v Brodman, 177 AD3d 1358, 1359 [4th Dept 2019] [internal quotation marks omitted]; see Campbell v Bell-Thomson, 189 AD3d 2149, 2150 [4th Dept 2020]). " '[T]he burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact only after the defendant . . . meets the initial burden . . . , and only as to the elements on which the defendant met the prima facie burden' " (Bubar, 177 AD3d at 1359).
We agree with defendants that they met their initial burden with respect to establishing the absence of any deviation from the accepted standard of care regarding defendant's performance of the surgery. In support of the motion, defendants submitted an expert's affidavit, which was "detailed, specific and factual in nature and addresse[d] plaintiff's specific . . . claim[s] of negligence" (Carroll v Niagara Falls Mem. Med. Ctr., 218 AD3d 1373, 1374 [4th Dept 2023] [internal quotation marks omitted]; see Campbell, 189 AD3d at 2150).
Thus, the burden shifted to plaintiff to demonstrate the existence of a triable issue of fact with respect to the element of defendant's alleged deviation from the appropriate standard of care, "on which . . . defendant met the prima facie burden" (Carroll, 218 AD3d at 1374 [internal quotation marks omitted]; see Bubar, 177 AD3d at 1359). In opposition to the motion, plaintiff submitted the affidavit of an expert, who opined that defendant departed from the appropriate [*2]standard of care in the manner that defendant initially positioned and repositioned plaintiff prior to surgery. Plaintiff's expert concluded that defendant did not properly position plaintiff's left leg at the outset of the surgery, that he did not monitor the circulation of the left leg by palpation during the surgery and, that because of the length of the surgery, compartment syndrome resulted. Thus, plaintiff raised a triable issue of fact through the affidavit of his expert, which "squarely oppose[d]" the affidavit of defendants' expert, resulting in "a classic battle of the experts that [was] properly left to a jury for resolution" (Nowelle B. v Hamilton Med., Inc., 177 AD3d 1256, 1258 [4th Dept 2019] [internal quotation marks omitted]).
We reject defendants' contention that plaintiff improperly raised a new theory of liability for the first time in opposition to defendants' motion for summary judgment. The theory of liability asserted by plaintiff against defendants in the pleadings and in opposition to the motion remained predicated at all times on allegations of undue pressure on plaintiff's left leg due to improper positioning in conjunction with the gastrointestinal surgery performed by defendant. Thus, the underlying theory of liability against defendants remained unchanged (see Hart v City of Buffalo, 218 AD3d 1140, 1149 [4th Dept 2023]; Jeannette S. v Williot, 179 AD3d 1479, 1481 [4th Dept 2020]). The duty to position plaintiff's leg properly to avoid damage was not outside the scope of plaintiff's pleadings, regardless of whether the offending positioning occurred just before the start of the surgery or during the surgery, when it became apparent that plaintiff's left lower limb was experiencing significant issues with its blood flow. Thus, the assertions of defendant's deviation from the standard of care made by plaintiff's expert with respect to the pre-surgical time frame are discernible from the pleadings and cannot be said to take defendants by surprise (see Valenti v Camins, 95 AD3d 519, 522 [1st Dept 2012]; see generally Alvord & Swift v Muller Constr. Co., 46 NY2d 276, 280-281 [1978]).
All concur except Curran, J., who concurs in the result in the following memorandum: Although I fully agree with the majority's determination to affirm the order denying the motion of Timothy M. Adams, M.D. and Delaware Surgical Associates (defendants) for summary judgment, I write separately to highlight two additional points. First, I want to emphasize why plaintiff did not assert a new theory of liability in opposition to defendants' motion for summary judgment. As we recently explained in Hart v City of Buffalo (218 AD3d 1140, 1149 [4th Dept 2023]), an "underlying theory of liability" is grounded in the duty allegedly breached by a defendant (id.; see Jeannette S. v Williot, 179 AD3d 1479, 1481 [4th Dept 2020]). In Hart, the duty allegedly breached was a municipality's "duty to maintain the subject premises in a reasonably safe condition" (218 AD3d at 1149). Thus, the theory of liability based on an alleged breach of that duty remained the same even after one of the defendants moved for summary judgment premised on the absence of prior written notice and the plaintiff opposed that motion by asserting exceptions to the written notice requirement. Similarly, in Jeannette S., the "theory of liability" was that a certain defendant was "negligent in failing to properly and timely" treat the subject patient, and that "the change in the precise nature of the harm actually suffered by [the subject patient did] not change the underlying theory of liability" (179 AD3d at 1481). There too, because the plaintiff's theory of liability was always rooted in the duty established by the underlying allegations of negligence and malpractice, the "theory of liability" did not change when, in opposition to the defendant's summary judgment motion, the plaintiff asserted a different form of harm stemming from those allegations. In both of those cases, we rejected arguments that the respective plaintiffs raised new theories of liability under those circumstances, and we determined that the courts erred in granting the defendants' respective motions for summary judgment (see Hart, 218 AD3d at 1149; Jeannette S., 179 AD3d at 1481).
The focus on the duty involved, and the alleged breach thereof, as the essential ground for identifying a "theory of liability" is borne out by the requirement that, "[i]n determining whether a new theory of liability has been alleged by a plaintiff in opposition to a defendant's motion for summary judgment, we must initially focus on the allegations in the complaint" (Braxton v Erie County Med. Ctr. Corp., 208 AD3d 1038, 1041 [4th Dept 2022]). Thus, a focus on the cause of action and the underlying facts alleged in the complaint and the duty upon which it is based is the guiding principle in evaluating whether a theory of liability is new or already existent in the case (see generally Darrisaw v Strong Mem. Hosp., 74 AD3d 1769, 1770 [4th Dept 2010], affd 16 NY3d 729 [2011]).
Through the above analysis, I agree with the majority that, in this case, the underlying theory of liability has at all times been predicated on the alleged breach of the duty by a medical [*3]professional—here Timothy M. Adams, M.D. (defendant), a surgeon—to render a medical service to plaintiff with that reasonable degree of knowledge and skill that is expected of an average specialist who performs an operation in the medical community in which the doctor practices (see PJI 2:150). Thus, when, in opposing defendants' motion, plaintiff relies on an evidentiary theory that defendant failed to properly position him at the time of the surgery, that allegation is not a "new theory of liability" because the duty allegedly breached remains the same and is at all times attributed to the same actor. As a result, the situation in this case may be distinguished from those cases where summary judgment dismissing a cause of action was properly granted inasmuch as, in opposition to a summary judgment motion, the plaintiff relied on the breach of a new and different duty (see e.g. Hewitt v Palmer Veterinary Clinic, PC, 35 NY3d 541, 549 [2020]; Guyett v Kaleida Health, 229 AD3d 1101, 1103-1104 [4th Dept 2024]; Walker v Caruana, 175 AD3d 1807, 1807-1808 [4th Dept 2019]), or the breach of a duty by different actors (see e.g. DeMartino v Kronhaus, 158 AD3d 1286, 1287 [4th Dept 2018]). Thus, I, like the majority, reject defendants' contention that plaintiff improperly raised a "new theory of liability" for the first time in opposition to the motion.
Second, in concurring with the majority's determination to affirm the order denying the motion, I highlight that defendants' parsing of the precise words used in the verified bill of particulars and supplemental bill of particulars that plaintiff submitted to defendants, the precise sequence of those words, and defendants' word-for-word comparison of those documents to the bills of particulars that plaintiff furnished to other defendants involved in this case, reveals a misapprehension of the purpose of bills of particulars in negligence actions in general, and more specifically, in medical malpractice actions such as this one. It also is inconsistent with the proper analysis described above for evaluating whether a new theory of liability has been advanced in opposition to summary judgment.
Specifically, in parsing the bills of particulars to such a degree, defendants overlook the clear language of CPLR 3043, which governs bills of particulars in personal injury actions, and which requires only a "[g]eneral statement of the acts or omissions constituting the negligence claimed" (CPLR 3043 [a] [3]). Indeed, it is well settled that a bill of particulars is not a disclosure device (see Northway Eng'g v Felix Indus., 77 NY2d 332, 336 [1991]; Stern v Golub Corp., 207 AD3d 1068, 1069 [4th Dept 2022]), and "[a] bill of particulars may not be used to obtain evidentiary material" (Nuss v Pettibone Mercury Corp., 112 AD2d 744, 744 [4th Dept 1985]; see Stern, 207 AD3d at 1069; Khoury v Chouchani, 27 AD3d 1071, 1072 [4th Dept 2006]). As a result, a party is not required "to hire an expert to respond to a demand for a bill of particulars" (Nuss, 112 AD2d at 745). Thus, a plaintiff need not supply in a bill of particulars "a statement of each and every way the defendants breached their duty of reasonable care" inasmuch as a demand for that information would be "beyond the scope of a bill of particulars . . . [because] to answer [such a demand], plaintiff would have to provide evidentiary material in the form of, or gleaned from, expert testimony" (Sonnenberg Gardens v Eldredge, Fox & Porretti, LLP, 52 AD3d 1211, 1212 [4th Dept 2008] [internal quotation marks omitted]; see Heyward v Ellenville Community Hosp., 215 AD2d 967, 968 [3d Dept 1995]).
I further note that CPLR 3043 also applies in the specific context of medical malpractice actions (see generally Chipley v Stephenson, 72 AD3d 1548, 1549 [4th Dept 2010]; Stidham v Clerk, 57 AD3d 1369, 1369 [4th Dept 2008]; Garrett v Community Gen. Hosp. of Greater Syracuse, 288 AD2d 928, 929 [4th Dept 2001]). It is improper in a medical malpractice action for a demand for a bill of particulars to "seek particularization of usual and accepted standards" of what "advice, diagnosis or treatment should have been made or given" because such demands "call for expert testimony and are purely evidentiary" (McKenzie v St. Elizabeth Hosp., 81 AD2d 1003, 1004 [4th Dept 1981]; see Stidham, 57 AD3d at 1370; Khoury, 27 AD3d at 1072-1073). A plaintiff in a medical malpractice action, "who most often is less likely than the defendant[s] to have knowledge of proper surgical procedures and medical treatment, [should not be held] to a greater burden than plaintiffs in other types of personal injury actions" (Grcic v Peninsula Hosp. Ctr., 110 AD2d 625, 626 [2d Dept 1985]; see Khoury, 27 AD3d at 1072; Garrett, 288 AD2d at 929; Randall v Pech, 51 AD2d 864, 865 [4th Dept 1976]).
With those basic principles in mind, I cannot agree with defendants that plaintiff here was required to describe in his bill of particulars and supplemental bill of particulars every time and manner at and by which defendant allegedly deviated from the standard of care when he allegedly failed to properly position plaintiff or detect improper positioning of plaintiff for the surgery. [*4]Rather, I agree with Supreme Court that this action "is and always has been about positioning." To that end, plaintiff's bill of particulars and supplemental bill of particulars refer specifically to defendant's alleged failure to re-position plaintiff during the surgery and that defendant failed to take precautions to maintain circulation. Thus, plaintiff fulfilled his obligation under CPLR 3043 (a) (3) with respect to the relevant bill of particulars, and defendants cannot claim to be unfairly surprised by the theory advanced by plaintiff in opposition to the summary judgment motion. That is particularly so in light of the fact that plaintiff clearly made defendants aware that he was alleging that defendant was negligent in the initial positioning for the surgery through the parties' deposition testimonies, and inasmuch as defendants' expert affidavit submitted in support of the motion directly addressed plaintiff's positioning during the surgery.
Entered: March 20, 2026
Ann Dillon Flynn
Clerk of the Court