AMF Trust Ventures LLC v I80 Group LLC (2026 NY Slip Op 00073)

AMF Trust Ventures LLC v I80 Group LLC

2026 NY Slip Op 00073

Decided on January 08, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: January 08, 2026

Before: Manzanet-Daniels, J.P., Kennedy, Pitt-Burke, Rosado, Chan, JJ. 

Index No. 653519/23, 656856/22|Appeal No. 5129-5130|Case No. 2025-01782, 2025-01781|

[*1]AMF Trust Ventures LLC et al., Plaintiffs-Respondents,
vi80 Group LLC et al., Defendants-Appellants.
Hemingway Group LLC, Plaintiff-Respondent,
vi80 Group LLC et al., Defendants-Appellants.

Sidley Austin LLP, New York (James Heyworth of counsel), and (Steven Sexton of the bar of the State of Illinois, admitted pro hac vice, of counsel), for appellants.
Cauley Law Group, LLC, Hinsdale, Illinois (Thomas K. Cauley, Jr. of counsel), for appellants.
Allen Matkins Leck Gamble Mallory & Natsis LLP, New York (Brian D. Hail of counsel), for AMF Trust Ventures LLC and Sunscape, respondents.
Pallas Partners (US) LLP, New York (Michael A. Hanin of counsel), for Hemingway Group LLC, respondent.

Orders, Supreme Court, New York County (Jennifer G. Schecter, J.), entered March 26, 2025, which, insofar as appealed from as limited by the briefs, granted plaintiffs' motions for partial summary judgment on liability on their breach of contract and breach of the implied covenant of good faith and fair dealing claims and denied defendants' motions for summary judgment dismissing these claims insofar as premised on the revenue share allegations, unanimously modified, on the law, to deny plaintiffs' motions with respect to the breach of contract claims premised on the revenue share allegations and mandatory redemption allegations and to grant defendants' motions dismissing the breach of contract claims insofar as premised on the revenue share allegations, and otherwise affirmed, without costs.
These two related cases arise from investments made by plaintiffs in defendant i80 Group LLC (i80 Manager) and i80 Group Lending Opportunities GP LLC (i80 GP) (the predecessor of defendant i80 Group Specialty Finance GP LLC), vehicles initially formed by defendant Marc Helwani to operate an investment fund known as i80 Group Lending Opportunities LP (the Fund). To facilitate the terms of their investment, plaintiffs, as Class B members, executed LLC agreements for i80 Manager (the i80 Manager LLC agreement) and i80 GP (collectively, the LLC agreements). These LLC agreements, which were later amended in 2019, set forth terms under which management fees and incentive revenue (i.e., carried interest) derived from the Fund would be distributed to Class B members. Plaintiffs maintain that defendants breached the i80 Manager LLC agreement, as well as the implied covenant of good faith and fair dealing, when, in 2021, Helwani launched new funds (the Iconiq Funds) that would be managed by a new entity, defendant i80 Group Vintage LLC (i80 Vintage) in connection with a new investment by nonparty Iconiq Capital (Iconiq). Plaintiffs assert that, by launching the Iconiq Funds and restructuring the i80 Group business so that the Iconiq Funds would be managed by i80 Vintage rather than i80 Manager, Helwani improperly deprived plaintiffs of the revenue share to which they were otherwise contractually entitled under the LLC agreements (the Revenue Share Allegations). Plaintiffs further allege that, after plaintiffs expressed their disagreement with Helwani's actions in forming the Iconiq Fund, Helwani unreasonably and in bad faith exercised his contractual discretion to initiate plaintiffs' complete withdrawal from i80 Manager and i80 GP and mandatorily redeem their investments (the Mandatory Redemption Allegations).
As it relates to the Revenue Share Allegations, defendants should have been granted summary judgment dismissing plaintiffs' breach of contract claims. However, summary judgment was properly granted in plaintiffs' favor on their breach of the implied covenant claims based on the Revenue Share Allegations.
On a prior appeal, this Court held that the motion court "properly denied defendants' motion to dismiss so much of the breach of contract claim as alleges that [i80 Manager] breached the [i80 Manager] LLC Agreement by not paying plaintiff its bargained-for revenue share when [i80 Manager] provided investment management or advisory services to funds other than the Fund" (Hemingway Group LLC v i80 Group LLC, 222 AD3d 422, 424 [1st Dept 2023]). This Court thus found that the i80 Manager LLC agreement entitled plaintiffs to a share of the management fees earned by i80 Manager from its management of any fund (not just the Fund), including the Iconiq Funds.
This Court did not, however, rule as to whether plaintiffs' contractual entitlements to fees extended to those fees earned by a separate management company such as i80 Vintage. A plain reading of the i80 Manager LLC agreement makes clear that they do not. Critically, the i80 Manager LLC agreement defines management fees as all income "received by the Company [i80 Manager] in connection with its providing investment management or investment advisory services." No other entity is listed. And even if there is some evidence in the record that i80 Vintage and i80 Manager share employees, space, and investment strategy, they are nonetheless separate entities, and plaintiffs do not seek to pierce the corporate veil. Accordingly, defendants established their entitlement to summary judgment dismissing plaintiffs' breach of contract claims related to the Revenue Share Allegations, and plaintiffs failed to rebut that showing.
That said, in our prior decision, this Court also identified the implied covenant of good faith and fair dealing as a potential separate basis for plaintiffs' entitlement to fees earned by i80 Vintage under the i80 Manager LLC agreement. Specifically, this Court held that plaintiffs had sufficiently alleged that "i80 [Manager] breached the implied covenant of good faith and fair dealing in the [i80 Manager] LLC Agreement" based on plaintiff's allegations that "defendants deprived it of the fruits of its bargain by . . . manag[ing] the [Iconiq] investment through entities other than the Fund" (Hemingway, 222 AD3d at 424-425; see also Shatz v Chertok, 180 AD3d 609, 609, 611 [1st Dept 2020]; Richbell Info. Servs. v Jupiter Partners, 309 AD2d 288, 290-296, 303 [1st Dept 2003]).
Given this Court's prior conclusion, Supreme Court correctly held that plaintiffs have established their entitlement to summary judgment on their implied covenant claims premised on the Revenue Share Allegations. As the record establishes, the parties understood at the outset of plaintiffs' investment in the Fund that defendants could not create a new investment management vehicle to avoid paying plaintiffs their agreed-upon revenue share. In particular, there was a mutual understanding among the parties that the initial investments into the Fund and i80 Manager would entitle plaintiffs to share in any future proceeds from subsequent funds established by defendants as part of the i80 Group business at a level commensurate with their initial investment.[FN1] Helwani later explicitly reiterated that understanding to plaintiffs (as well as other Class B investors) while soliciting additional investments and consent to amend the LLC agreements. Accordingly, by forming the Iconiq Funds and restructuring the i80 Group business to exclude plaintiffs or otherwise dilute their revenue share interests, defendants breached the implied covenant.
It is of no consequence that the i80 Manager LLC agreement does not explicitly contemplate the present scenario in which defendants created not only new funds but also a new investment management vehicle to manage and receive fees from those funds. "No contract, regardless of how tightly or precisely drafted it may be, can wholly account for every possible contingency" in which case "it may be appropriate to fill a gap using the implied covenant" (NAMA Holdings, LLC v Related WMC LLC, 2014 WL 6436647, *16-17, 2014 Del Ch LEXIS 232, *48-49 [Del Ch, Nov. 17, 2014, C.A. No. 7934-VCL]). That is particularly so where, as here, the parties "have understandings or expectations that were so fundamental that they did not need to negotiate about those expectations" (see Cygnus Opportunity Fund, LLC v Washington Prime Group, LLC, 302 A3d 430, 459 [Del Ch 2023]). Nor does it matter whether defendants or Iconiq drove the i80 Group restructuring. The fact that a third party caused defendants to breach an (implicit) contractual promise does not excuse the resulting breach. At any rate, there is no evidence suggesting that the creation of new funds and a new investment management vehicle and the stripping of plaintiffs' revenue sharing rights in connection therewith were necessary preconditions to the Iconiq investment.
Turning to the Mandatory Redemption Allegations, plaintiffs failed to establish their entitlement to summary judgment in connection with these claims. As noted, the Mandatory Redemption Allegations center on whether Helwani acted unreasonably and in bad faith by invoking Section 3.8 of the LLC agreements. That section provides, in relevant part, that Helwani could "require the complete or partial withdrawal of a Member" if he "determine[d] in [his] reasonable discretion that the continued undiminished membership of such Member in the Company would . . . be detrimental to the Company, as determined in [his] reasonable discretion."
Under Delaware law, whether Helwani acted within his "reasonable discretion" under Section 3.8 necessarily turns on whether an objective, reasonable person could conclude that he was justified in requiring plaintiffs' withdrawal from i80 Manager and i80 GP (see Leo Investments Hong Kong Limited v Tomales Bay Capital Anduril III, L.P., 342 A3d 1166, 1210-1211 [Del Ch 2025]). This is typically a fact-intensive inquiry requiring a trier of fact to make credibility determinations and weigh evidence (see Desert Equities, Inc. v Morgan Stanley Leveraged Equity Fund, II, L.P., 624 A2d 1199, 1206-1207 [Del 1993]).
To support the Mandatory Redemption Allegations, plaintiffs adduce testimony and documents in the record indicating that Helwani forced their withdrawals for the purpose of evading plaintiffs' contractual rights and retaliating against them for expressing dissent and attempting to vindicate their legal rights. Defendants, however, point to communications and testimony in the record suggesting that Helwani only acted after being confronted, over the course of six months, by plaintiffs' purported campaign of harassment, threats, disparagement, and disclosure of confidential information. Plaintiffs vehemently dispute defendants' proffered justification and deny engaging in such conduct. Nevertheless, the record on summary judgment, viewed in a light most favorable to defendants, could support a conclusion that Helwani acted within his "reasonable discretion" because he determined that plaintiffs' continued membership in i80 Manager and i80 GP would be detrimental to those entities.[FN2] Consequently, given the inherent credibility determinations and requisite weighing of evidence required to resolve these claims, Supreme Court erred in granting summary judgment to plaintiffs in connection with the Mandatory Redemption Allegations (see Asabor v Archdiocese of N.Y., 102 AD3d 524, 527 [1st Dept 2013]). Finally, Supreme Court correctly determined that defendants' argument with respect to the absence of proximate causation — that the alleged misconduct did not proximately cause plaintiffs' damages because the elimination or reduction of plaintiffs' revenue share was a necessary precondition of Iconiq's investment — is unavailing. To start, these contentions are largely premature, as the amount of damages has yet to be determined. Although damages are an element of a breach of contract or breach of the implied covenant of good faith and fair dealing claim, it is undisputed that, if plaintiffs' theories of liability are found to be valid, then plaintiffs will have suffered some amount of damages, as even defendants' expert acknowledges (see In re Essar Steel Minnesota LLC, 2024 WL 4047451, *11, *34, 2024 Bankr LEXIS 2094, *46, *103-104 [Bankr D Del, Aug. 27, 2024, Case No. 16-11626 (CTG)], clarified by 2024 WL 4429208, 2024 Bankr LEXIS 2443 [Bankr D Del, Oct. 4, 2024]). 
 THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 8, 2026

Footnotes

Footnote 1: Extrinsic evidence may be considered in assessing the implied covenant claim, even if not relevant to the breach of contract claim (see Horizon Personal Communications, Inc. v Sprint Corp., 2006 WL 2337592, *14 n 129, 2006 Del Ch LEXIS 141, *60 n 129 [Del Ch, Aug. 4, 2006, No. 1518-N]; Madryn Asset Management, LP v Trailmark Inc., 2024 WL 1348869, *6, 2024 US Dist LEXIS 58983, *19 [SD NY, Mar. 30, 2024, No. 23 Civ. 3704 (JPC)]).

Footnote 2: Contrary to plaintiffs' position, there is no basis to disregard Helwani's testimony as "self-serving" because there is no indication that it conflicts with some prior testimony (see Miller v City of New York, 253 AD2d 394, 395 [1st Dept 1998]).