**Warlock Partners, LLC v Arena Group Holdings, Inc.**

2026 NY Slip Op 30841(U)

March 6, 2026

Supreme Court, New York County

Docket Number: Index No. 655322/2023

Judge: Melissa A. Crane

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 60M

----------------------------------------------------------------------X

Warlock Partners, LLC

                         Petitioner,

          - v -

The Arena Group Holdings, Inc.,
Ross Levinsohn

                        Respondents.

----------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 655322/2023 |
| **MOTION DATE** | 05/05/2025 |
| **MOTION SEQ. NO.** | 005 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 005) 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 260, 261, 262, 263, 264, 265, 266, 267, 268, 269, 270, 271, 272, 273, 274, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 285, 286, 287, 288, 289, 290, 291, 292, 293, 294, 295, 296, 297, 298, 299, 300, 301, 302, 303, 304, 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 319, 320, 321, 322, 323, 324, 325, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 336

were read on this motion to/for                   **JUDGMENT - SUMMARY**

## I.     **Introduction**

Defendant, The Arena Group Holdings, Inc. ("Arena") seeks an order pursuant to CPLR § 3212 granting summary judgment in their favor, dismissing all claims against Arena with prejudice, and awarding Arena the attorneys' fees it incurred in investigating and defending against Warlock Partners, LLC's ("Warlock") claims pursuant to the parties' contractual fee-shifting provisions.

**655322/2023   Warlock Partners, LLC vs. The Arena Group Holdings, Inc. et al**
**Motion No. 005**

Page 1 of 21

[* 1]

## II.    Background

### a.    Failed Transfer to JPMorgan – Common Shares

On June 2, 2021, Warlock acquired 7,142,857 Arena common shares through a Securities Purchase Agreement ("SPA") between Arena and Warlock (NYSCEF Doc. No. 117). In the SPA, the parties agreed that New York law would govern the agreement.

On February 7, 2022, following a call with Christorpher Petzel ("Petzel"), Warlock staff, Julie Fenster ("Fenster"), general counsel for Arena, informed Eric Bassman ("Bassman"), compliance officer and stock administrator at Arena, of Warlock's intent to move their shares into a brokerage account (NYSCEF Doc. No. 276). On November 10, 2022, Colette Young ("Young"), chief investment officer at Warlock, inquired if Warlock's shares were covered under Rule 144 (NYSCEF Doc. No. 281). Bassman replied that Arena's previous S-1 was stale and that as of November 11, 2022, the S-3 was filed but had not gone into effect by the Securities and Exchange Commission ("SEC") (*id.*). Bassman then gave a general response regarding Rule 144 (17 C.F.R. § 230.144), that provides an exemption from registration requirements for the sale of restricted, unregistered, and control securities if certain conditions are met. He stated that "[r]ule 144 has been available for shareholders. That being said, any Warlock proposed sale under Rule 144 would need to go through a review with Securities counsel, to review the specific circumstances for Warlock (as a very large shareholder)" (*id.*).

Marie Freire-Crespo ("Freire-Crespo") of JPMorgan reached out to Bassman with the diligence questions regarding Rule 144 on November 10, 2022 (NYSCEF Doc. No. 284). The following day, Bassman outlined that he was in touch with Warlock directly and that this is not a typical Rule 144 scenario "…as Warlock was listed as >10%shareholder in our 10K (etc.). If they have interest in selling under this route, we will have to do a prereview with securities

655322/2023   Warlock Partners, LLC vs. The Arena Group Holdings, Inc. et al                    Page 2 of 21
Motion No. 005

2 of 21

counsel . . . I will be back in touch if Warlock indicates they want to proceed" (*id.*). Bassman also notified Young that someone from JPMorgan contacted him asking diligence questions about Warlock's Rule 144 eligibility (NYSCEF Doc. No. 281). Young asked Bassman to work with JPMorgan, the brokerage to which Warlock planned to move its shares (*id.*). Bassman then explained that was a restrictive legend on the shares because of Arena's former shell status and past of delinquent filings (*id.*). Bassman asked Young to clarify her intention and rationale behind the request, so he could determine the best way to achieve Warlock's intended outcome because "shares cannot be transferred free-and-clear to reside at a third-party custodian" (*id.*). Bassman also mentioned that "…Rule 144 has a present-intent-to-sell requirement, so that cannot be the basis for a transfer request that is not part of a sale" (*id.*).

Arena and Warlock discussed the transfer to JP Morgan in a call on November 16, 2022. (NYSCEF Doc. No. 203). Young emailed Bassman for an update on November 29, 2022 and December 2, 2022 (NYSCEF Doc. No. 281). On December 2, 2022, Bassman sent a response in which he reiterated that the S-1 was stale and the S-3 was not in effect with the SEC yet (*id.*). Bassman also explained that the S-3 must be deemed effective before any next steps can be considered (*id.*).

In a December 12, 2022 email to Fenster, Young expressed her dissatisfaction with the support she received from Bassman and asked that Arena "share all relevant documentation regarding our shares and shareholder rights, accompanied by a short summary with key takeaways that we may reference in order to navigate such documentation and reasonings as to why we are being treated so differently than other shareholders" (NYSCEF Doc. No. 285). On December 13, 2022, Fenster apologized for Arena's lack of responsiveness and proposed that the parties speak and establish how to work together moving forward (*id.*).

655322/2023   *Warlock Partners, LLC vs. The Arena Group Holdings, Inc. et al*                    Page 3 of 21
Motion No. 005

3 of 21

[* 3]

The S-3 became effective on December 19, 2022 (NYSCEF Doc. No. 135). On December 21, 2022, Fenwick sent a draft of the blanket resale opinion to Fenster, Bassman, and Jessenia Poteat ("Poteat") of Arena's transfer agent, American Stock Transfer and Trust Company ("AST") (NYSCEF Doc. No. 287). After receiving confirmation from Poteat, Fenwick sent the executed blanket resale opinion on December 27, 2022 (NYSCEF Doc. No. 288). Fenster testified that she believed Bassman informed Warlock of their ability to sell because the S-3 went into effect (NYSCEF Doc. No. 272 at 88:15-89:9). However, Bassman testified that he does not remember whether he or anyone at Arena informed Warlock S-3 became effective and that he does not know who would have been responsible for informing Warlock (NYSCEF Doc. No. 270 at 426:21-427-17).

As of February 13, 2023, Freire-Crespo had not heard from Bassman regarding the diligence questions (NYSCEF Doc. No. 292). On February 17, 2023, Fenster requested a broker representation letter and a shareholder representation letter from Young to facilitate the transfer of the common shares to JPMorgan (NYSCEF Doc. No 293). JPMorgan could not sign the letter without a response to the diligence questions they sent to Arena (NYSCEF Doc. No. 293).

On March 10, 2023, Freire-Crespo asked Yuval Brokman ("Brokman") of JPMorgan to reach out to Arena again because she had not received a response (NYSCEF Doc. No. 299). Freire-Crespo also informed Brokman that Young will do this work somewhere else if Arena does not reply promptly (*id.*). On March 13, 2023, Brokman replied that he heard from Young and that Fenster agreed to help directly (*id.*). On March 20, 2023, Fenster answered JP Morgan's diligence questions (NYSCEF Doc. No. 301). Three days later, on March 23, 2023, JPMorgan rejected the shares because Arena's answers were not sufficient and it deemed the transaction too risky (NYSCEF Doc. No. 241).

b. **Unwound Series H Conversion and Failed Reconversion – Series H Preferred Shares**

In 2020, Warlock began purchasing Arena's preferred shares (Series H shares) from third parties (NYSCEF Doc. No. 115). The Series H Certificate of Designation details the preferences, rights, and limitations associated with ownership of Series H Preferred Shares (NYSCEF Doc. No. 138). The parties agreed that Delaware law would govern the agreement (*id.*). The Series H Certificate of Designation contains a Beneficial Ownership Limitation which provides that, if the preferred stock is converted to common stock, a Holder may only acquire 4.99% "of the number of shares of the Common Stock outstanding immediately after giving effect to the issuance of shares of Common Stock issuable upon conversion of Preferred Stock held by the applicable Holder," or a 9.9% limitation "upon election by a Holder prior to the issuance of any shares of Preferred Stock, 9.99% (*id.*). Although upon notice to the Corporation, the holder may also increase or decrease the Beneficial Ownership Limitation, but it may never exceed "9.99% of the number of shares of the Common Stock outstanding immediately after giving effect to the issuance of shares of Common Stock upon conversion of this Preferred Stock held by the Holder" (*id.*). Any increase in the Beneficial Ownership Limitation is not effective until 61 days after the notice is delivered to the Corporation (*id.*).

Warlock first inquired about converting the Series H shares to common stock on December 31, 2020 (NYSCEF Doc. No. 139). Arena informed Warlock that the Series H shares do not automatically convert, but they can be converted at the choice of the holder (*id.*). Arena also outlined that to convert the shares, Warlock would need to send Arena a conversion notice and waive the Beneficial Ownership Limitation should the conversion bring Warlock over 5% (*id.*).

655322/2023   Warlock Partners, LLC vs. The Arena Group Holdings, Inc. et al                    Page 5 of 21
Motion No. 005

5 of 21

On October 7, 2021, Arena informed Warlock that Arena intended to file a S-1 Registration with the SEC and advised Warlock of the choices it could make in connection with its equity held in the company (NYSCEF Doc. No. 123). This communication also explained the process to convert their Series H Preferred shares (*id.*). On October 26, 2021, Warlock returned an executed Notice of Conversion, that authorized the conversion of the Series H Preferred Shares into common stock (NYSCEF Doc. Nos. 142, 144). This conversion was unwound on January 7, 2022 (NYSCEF Doc. No. 148). Bassman testified that the conversion was unwound because Arena's securities counsel concluded that the conversion was inappropriate (NYSCEF Doc. No. 146 at 187:2-11).

Following the unwinding of the conversion, Warlock attempted to convert the Series H shares to common stock again. On Tuesday October 18, 2022, Young contacted Doug Smith ("Doug"), chief financial officer of Arena, and inquired about the different share classes and amounts Warlock held and a potential situation where all the investors, except Warlock, converted their shares (NYSCEF Doc. No. 281). In response, Doug confirmed that as of October 19, 2022, Warlock had 1,488,617 shares of common stock and 2,200 shares of Series H Preferred (convertible to 303,100 common) (*id.*). Doug also stated that the series H Preferred shares were convertible at the option of the holders, that many of the investors had converted, but, many had not, and that Warlock could convert its shares at any time by providing notice (*id.*).

On November 7, 2022, Young contacted Doug again to inquire about a Series H conversion and an issue regarding Warlock's shares with Arena's transfer agent, AST (NYSCEF Doc. No. 152). Doug's reply added Bassman to the email thread and attached the relevant AST statements for Warlock's Series H Preferred shares and common shares (*id.*). Young spoke with Bassman on November 15, 2022 (NYSCEF Doc. No. 153). Following this conversation, on

655322/2023 Warlock Partners, LLC vs. The Arena Group Holdings, Inc. et al
Motion No. 005

Page 6 of 21

6 of 21

December 12, 2022, Young wrote to Fenster to express her disappointment with Arena's support during this process (NYSCEF Doc. No. 154). First, Young claimed that, despite her persistent requests over several months for a document including "a description of the rights associated with the Series H shares," Bassman instead encouraged her to look for the information online — a suggestion she found "borderline offensive" (*id.*). Second, Young mentioned that Warlock was alerted by other investors with considerably less ownership than Warlock "that they were all informed of their rights, alerted about the opportunity to convert, and [were] routinely communicated with" (*id.*). In closing, Young requested that someone from Arena "share all relevant documentation regarding our shares and shareholder rights, accompanied by a short summary with key takeaways that we may reference in order to navigate such documentation and reasonings as to why we are being treated so differently than other shareholders" (*id.*).

During a December 19, 2022 conference call between Arena and Warlock, Arena reiterated that Warlock could convert at any time (NYSCEF Doc. No. 156). On January 18, 2023, Young asked Fenster for the Series H Notice of Conversion form and expressed Warlock's desire to convert the Series H shares (NYSCEF Doc. No. 158). On January 23, 2023, Fenster provided Young with the Notice of Conversion and the conversion ratio for the shares (NYSCEF Doc. No. 159). On January 27 and 30, 2023, Young wrote to Arena asking for technical and substantive help in completing the form (NYSCEF Doc. No. 160). On February 1, 2023, Young followed up with additional substantive questions (NYSCEF Doc. No. 161). The following day, Fenster sent an attachment of the Certificate of Designation, brought the Beneficial Ownership Limitation to Young's attention, and informed Young of Warlock's right to waive that provision (*id.*). Fenster also mentioned that they should review the Notice of Conversion to ensure that it was proper in light of the provision (*id.*). Additionally, Fenster offered to set up a call with

655322/2023   Warlock Partners, LLC vs. The Arena Group Holdings, Inc. et al          Page 7 of 21
Motion No. 005

[* 7]                                                    7 of 21

Arena's outside counsel to assist with the review and any necessary changes to the Notice of Conversion (*id.*). On February 8, 2023, Young suggested a call with all parties to discuss "the Series H Convertible Preferred Stock and the blocker" (NYSCEF Doc. No. 163). The parties ultimately held this call on February 15, 2023 (NYSCEF Doc. No. 166).

The day after the call, Fenster followed up with Young regarding open items (NYSCEF Doc. No. 167). Fenster notified Young that Warlock's January request could <u>not</u> be used to start the clock for the 61 days needed for an increase in the Beneficial Ownership Limitation to take effect (*id.*). Fenster also asked Young to return the Notice of Conversion once it was completed and offered to answer any further questions (*id.*). On March 23, 2023, Fenster reached out to Young to inquire about the notice for the Beneficial Ownership Limitation (NYSCEF Doc. No. 168).

On May 3, 2023, Warlock filed a Schedule 13G form with the SEC so as to provide notice that it owned more than 5% of Arena's stock. In the filing, Warlock mentioned its intent to increase the Beneficial Ownership Limitation to 9.99% (NYSCEF Doc. No. 169). Warlock's Series H shares automatically converted on August 10, 2023, in accordance with the terms of the Certificate of Designation (NYSCEF Doc. No. 170).

### c. **Procedural History**

On October 26, 2023, Warlock filed a ten-count complaint, asserting tort and contract claims against Arena and breach of fiduciary claims against Arena's CEO at the relevant time, Ross Levinsohn (NYSCEF Doc. No. 2). The claims are as follows: Count I for breach of contract against Arena with respect to the common shares; Count II for breach of the covenant of good faith and fair dealing against Arena with respect to the common shares; Count III for violation of 6 Del. C. § 8-401 against Arena; Count IV for breach of contract against Arena with respect to

**655322/2023  Warlock Partners, LLC vs. The Arena Group Holdings, Inc. et al**
**Motion No. 005**

Page 8 of 21

8 of 21

[* 8]

the preferred shares; Count V for breach of the covenant of good faith and fair dealing against Arena with respect to the preferred shares; Count VI for constructive fraud against Arena with respect to the common shares; Count VII for conversion against Arena with respect to the common shares; Count VIII for conversion against Arena with respect to the preferred shares; Count IX for breach of fiduciary duty against Levinsohn with respect to the common shares; and Count X for breach of fiduciary duty against Levinsohn with respect to the preferred shares (*id.*).

On December 22, 2023, Arena and Levinsohn moved to dismiss the complaint (NYSCEF Doc. No. 16). On April 18, 2024, the Court dismissed Count VI, Count VII, and Count VIII on the record (NYSCEF Doc. No 61). After considering the rest of the motion, on July 26, 2024 the Court granted the motion to dismiss as to Count I, Count IV, and Count III with prejudice, and dismissed Counts IX and X with leave to replead (*id.*).

On September 16, 2024, Warlock filed an amended complaint that reasserted the claims for breach of the covenant of good faith and fair dealing and repleaded the breach of fiduciary duty claims against Levinsohn of Arena (NYSCEF Doc. No. 64). On October 15, 2024, Levinsohn moved to dismiss the breach of fiduciary duty claims as against him (NYSCEF Doc. No. 70). On January 9, 2025, the Court granted the motion (NYSCEF Doc. No. 88). This left the causes of action for breach of the covenant of good faith and fair dealing with respect to the common and preferred shares. Following the Court's order, Arena made this motion. No note of issue has been filed in this case.

## III. Legal Standards

### a. Summary Judgment Standard

On a motion for summary judgment under CPLR 3212, the moving party must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence

655322/2023   Warlock Partners, LLC vs. The Arena Group Holdings, Inc. et al          Page 9 of 21
Motion No. 005

9 of 21

to demonstrate the absence of any material issues of fact (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). If the moving party makes that prima facie showing, the burden then shifts to the nonmoving party to establish the existence of material issues of fact requiring a trial (*id.*). The evidence should be analyzed in the light most favorable to the nonmoving party (*Bazdaric v Almah Partners LLC*, 41 NY3d 310, 316 [2024]).

### b. Implied Covenant of Good Faith and Fair Dealing – Common Shares

Under New York law, all contracts include an implied covenant of good faith and fair dealing (*AEA Middle Mkt. Debt Funding LLC v Marblegate Asset Mgt., LLC*, 214 AD3d 111, 132 [1st Dept 2023]). "The covenant provides that no party to a contract shall take any actions to spoil the rights of another party to receive the fruits of the contract" (*id.*). A cause of action for breach of covenant of good faith and fair dealing is duplicative when it seeks the same damages and is based on the same operative facts as a breach of contract claim and should be dismissed (*id.* at 132-133). The breach of covenant of good faith and fair dealing claim is not duplicative when the conduct that is alleged is "separate from the conduct constituting the alleged breach of contract and such conduct deprived the other party of the benefit of its bargain" (*id.* at 133).

When the agreement requires the parties to exercise discretion, the covenant of good faith and fair dealing "includes a promise not to act arbitrarily or irrationally in exercising that discretion" (*Cordero v Transamerica Annuity Serv. Corp.*, 39 NY3d 399, 409 [2023]). This covenant obligates the parties to carry out their duties under the contract in a reasonable way (*id.*). When determining what is reasonable, the Court considers "what the parties would have expected under the contract" (*id.*). Additionally, the Court will assume that contracts "include any promises which a reasonable person in the position of the promisee would be justified in

[* 10]

understanding were included" at the time of formation (*id.*). The implied obligations cannot be inconsistent with the express terms in the written agreement between the parties (*id.* at 410).

Whether a party's behavior was in bad faith is "an issue generally left to the trier of fact" (*Richbell Info. Servs. v Jupiter Partners, L.P.*, 309 AD2d 288, 303 [1st Dept 2003]).

### c. Implied Covenant of Good Faith and Fair Dealing – Series H Preferred Shares

Under Delaware law, every contract contains an implied covenant of good faith and fair dealing (*Kuroda v SPJS Holdings, L.L.C.*, 971 A2d 872, 888 [Del Ch 2009]). This covenant requires parties to a contract to "refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits' of the bargain" (*id.*). The implied covenant does not place free-floating duties on the contracting parties but has the narrow purpose of ensuring that the reasonable expatiations of the parties are fulfilled (*id.*). Therefore, a claim for breach of the implied covenant of good faith and fair dealing "must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff" (*id.*). Broad assertions of bad faith are insufficient (*id.*). This implied covenant cannot be used to override express terms of the agreement (*id.*). Good faith in this context considers "faithfulness to the scope, purpose, and terms of the parties' contract" (*Cygnus Opportunity Fund, LLC v Washington Prime Group, LLC*, 302 A3d 430, 460 [Del Ch 2023]).

### IV. Discussion

### a. Implied Covenant Claims are Not Duplicative of Dismissed Breach of Contract Claims

655322/2023   Warlock Partners, LLC vs. The Arena Group Holdings, Inc. et al        Page 11 of 21
Motion No. 005

11 of 21

As a preliminary matter, the Court rejects Arena's argument that it is entitled to summary judgment on both claims for breach of the implied covenant of good faith and fair dealing solely because Arena claims they are duplicative of the breach of contract claims that were previously dismissed. Under New York and Delaware law, a claim for the breach of the implied covenant and fair dealing must allege conduct separate from the conduct supporting a breach of contract claim (*AEA Middle Mkt. Debt Funding LLC v Marblegate Asset Mgt., LLC*, 214 AD3d 111, 132-133 [1st Dept 2023]; *Kurt M. Roth v Sotera Health Co.*, 2024 Del. Ch. LEXIS 328, *25 [Sep. 23, 2024, No. 2022-1192-LWW]).

Here, because the breach of contract claim in connection with the common shares was dismissed on July 26, 2024 (NYSCEF Doc. No. 61), the implied covenant claim cannot be dismissed as duplicative (*see Punch Fashion, LLC v Merchant Factors Corp.*, 180 AD3d 520, 523 [1st Dept 2020]).

Turning to the preferred shares, Warlock alleges that Arena breached the implied covenant by frustrating Warlock's ability to convert their Series H Preferred shares because Arena ignored Warlock's multiple requests for help with the conversion with no reasonable explanation (NYSCEF Doc. No. 64). The implied covenant claim centers Arena's alleged abuse of their discretion under the Series H Certificate of Designation. Conversely, the breach of contract claim is grounded in allegations that Warlock is entitled to liquidated damages because the Certificate of Designation provides that Warlock had the ability to convert their preferred shares at any time and to waive the usage of the Beneficial Ownership Limitation, Preferred Shares are to be converted to common shares within two Trading Days of Warlock providing the notice of conversion to Arena, and that Arena had to pay liquidated damages per Trading Day until either the conversion was delivered or the Holder rescinded the conversion (NYSCEF Doc.

[* 12]

No. 138). Warlock claims that they requested the conversion on January 30, 2023, but Arena did not complete the conversion until August 10, 2023 (NYSCEF Doc. No. 2). As a result, Warlock contends that they are entitled to liquidated damages (*id.*). Under the facts alleged here, the implied covenant claim remains viable because it is not duplicative of the breach of contract claim.

### b. Implied Covenant Claims Do Not Fail for Lack of Damages

Arena argues that the implied covenant of good faith and fair dealing claims fail because Warlock cannot prove damages. Warlock claims that the record provides support for "at least three categories of compensable harm: (1) lost opportunity to sell or access liquidity during a critical pricing window; (2) entitlement to liquidated damages under SPA § 4.2(b)…; and (3) reputational and economic harm stemming from Arena's obstruction" (NYSCEF Doc. No. 333).

First, the Court addresses categories 1 and 3. Damages are a core requirement of a claim for breach of the covenant of good faith and fair dealing (*AMF Trust Ventures LLC v I80 Group LLC*, ___AD3d___, 2026 NY Slip Op 00073, *1 [2026]). In this case, if Warlock is successful on its claims, it will have suffered some damages. The parties agree that Warlock transferred its holdings of Arena's common stock to its broker, T.R. Winston & Company ("T.R. Winston") (NYSCEF Doc. No. 335). The parties also agree that subsequently, Warlock sold their shares through open-market transactions (*id.*). Therefore, if there is evidence that Arena breached the implied covenant and caused Warlock to lose an opportunity to sell or access liquidity during a critical pricing window or suffer reputational and economic harm, Warlock would be entitled to damages (*AMF Trust Ventures LLC*, ___AD3d___ at __, NY Slip Op at *1).

Second, with respect to category 2, a claim for breach of covenant of good faith and fair dealing cannot stand "where the alleged breach is 'intrinsically tied to the damages allegedly

655322/2023  Warlock Partners, LLC vs. The Arena Group Holdings, Inc. et al          Page 13 of 21
Motion No. 005

13 of 21

resulting from a breach of the contract'" (*Hawthorne Group, LLC v RRE Ventures*, 7 AD3d 320, 323 [1st Dept 2004]). The Court rejects Warlock's argument that it is entitled to liquidated damages under the SPA because these allegations turn on Arena having a public information failure in violation of § 4.2(b) of the SPA. A claim for a breach of the implied covenant cannot be maintained in connection to these damages because the damages are "intrinsically tied" to a breach of contract claim.

### c. Implied Covenant of Good Faith and Fair Dealing – Common Shares

Warlock claims that Arena violated the implied covenant of good faith and fair dealing because it abused its contractual discretion under the SPA by withholding materials and information, failed to inform Warlock which internal process applied, and responded to direct inquires with vague responses. Specifically, Warlock maintains that during its attempt to transfer shares to JPMorgan, Arena allowed its S-1 registrations to go stale, delayed filing the S-3, and failed to confirm Warlock's Rule 144 eligibility when asked repeatedly over a multi-month period. Arena argues that they cooperated during the attempt to transfer the shares to JPMorgan and that JPMorgan's decision to reject the shares based on concerns about Arena's SEC reporting deficiencies was not a result of any bad faith conduct on Arena's behalf.

During Warlock's attempt to transfer the common shares to JPMorgan in November 2022, Young asked directly if the shares were covered under Rule 144. In Bassman's response, he told Young that that Rule 144 has always been available, but any sale proposed under Rule 144 for Warlock would need to be reviewed by securities counsel to review the specific circumstances. (NYSCEF Doc. No. 281). However, Bassman did highlight that the answer to the Rule 144 inquiry was a general response only (*id.*). Following a call on November 16, 2022, Young reached out to Bassman for an update on November 29, 2022 and December 2, 2022 (*id.*).

655322/2023   Warlock Partners, LLC vs. The Arena Group Holdings, Inc. et al          Page 14 of 21
Motion No. 005

14 of 21

[* 14]

On December 2, 2022, Bassman apologized to Young for the delay and restates that the S-1 is stale and that the S-3 is not yet effective (*id.*). Bassman also highlights that next steps cannot be considered until the S-3 is effective (*id.*). However, Bassman does not do anything to ensure that Warlock is notified when the S-3 was deemed effective.

After the S-3 became effective on December 19, 2022, Fenwick sent a draft of the blanket resale opinion on December 21, 2022 and then the executed blanket resale opinion to Fenster, Bassman, and Poteat of AST on December 27, 2022 (NYSCEF Doc. Nos. 287-288). Fenster testified that she was under the impression that Bassman informed Warlock that the S-3 went into effect (NYSCEF Doc. No. 272 at 88:15-89:9). Yet the record demonstrates that Bassman does not remember informing Warlock (NYSCEF Doc. No. 270 at 426:21-427-17). Moreover, Bassman testified that he does not remember if anyone informed Warlock nor does he remember who would have been responsible for doing so (*id.*).

Fenster and Bassman acknowledged how important the S-3 was to achieving Warlock's goals, but neither of them made sure that Warlock was informed when the S-3 became effective (NYSCEF Doc. No. 272 at 88:15-89:9; 270 at 426:21-427-17). This factual dispute, standing alone, presents a question of whether Arena performed their duties under the contract in a reasonable way. In any event, Defendant's motion fails for the additional reasons discussed below.

Arena's contention that it cooperated during the attempted transfer to JPMorgan and that JPMorgan's rejection of the shares was unrelated to any bad faith on Arena's part is unpersuasive. On November 11, 2022, Young asked Bassman to work with the JPMorgan team to arrange for moving the shares from AST to JPMorgan (NYSCEF Doc. No. 281). As of February 13, 2023, the JPMorgan team had not heard back from Bassman regarding the Rule 144

[* 15]

information (NYSCEF Doc. No. 292). On March 13, 2023, Brokman asked Freire-Crespo to contact Fenster one more time (NYSCEF Doc. No. 299). Brokman also stated that JPMorgan would close out the case if Fenster could not confirm Rule 144 and answer the diligence questions (*id.*). Arena's failure to confirm Rule 144 and answer the diligence questions over several months creates a question of fact concerning how it carried out its duties under the agreement. Likewise, whether or not Arena's actions were in bad faith is a question for the factfinder.

Accordingly, Defendant's motion is denied as to the breach of covenant of good faith and fair dealing in respect to the common shares.[1]

### d. Implied Covenant of Good Faith and Fair Dealing – Series H Preferred Shares

As an initial matter, Arena correctly argues that a "court should not consider the merits of a new theory of recovery, raised for the first time in opposition to a motion for summary judgment, that was not pleaded in the complaint" (*Ostrov v Rozbruch*, 91 AD3d 147, 154 [1st Dept 2012]). However, a party is permitted to "raise even a completely unpleaded issue on summary judgment so long as the other party is not taken by surprise and does not suffer prejudice" (*Valenti v Camins*, 95 AD3d 519, 522 [1st Dept 2012]). Warlock's claim is not a new theory of recovery different from that asserted in the Amended Complaint. Rather, it expounds on the complaint's allegation that Arena breached the implied covenant of good faith and fair dealing by frustrating Warlock's ability to convert its Series H preferred shares to common shares (Amended Complaint at ¶ 116; NYSCEF Doc. No. 64). While the Amended Complaint does not specifically allege that the unwinding of the conversion was improper, Fenster testified

---

[1] It is entirely unclear from EDOC 335 and surrounding papers to what extent this claim is moot due to subsequent events, if that is in fact what Arena meant to argue.

during her deposition that she did not recall why Warlock unwound the Series H conversion in January of 2022 (NYSCEF Doc. No. 272 at 22:5-22:9). Bassman also testified about the unwinding of the Series H shares in his deposition (NYSCEF Doc. No. 146 at 186:7-188:3; *cf. Karanevich-Dono v Haas*, 231 AD3d 576, 577-578 [1st Dept 2024] ["That theory of liability was improperly raised for the first time in opposition to defendants' summary judgment motion, and it was not pleaded in the complaint and bill of particulars, nor was it raised as an issue in Dr. Haas's deposition"]). Therefore, there is no surprise or prejudice to Arena because the issue of the unwound Series H conversion was clearly identified during the depositions of Fenster and Bassman (*Valenti*, 95 AD3d at 522). As such, Warlock appropriately raised this theory in opposition to Arena's motion.

The Court now considers the merits of the implied covenant claim with respect to the preferred shares. Warlock identifies two implied duties that Arena allegedly breached. First, it alleges that Arena's unwinding of the October 2021 Series H Conversion was arbitrary and in bad faith. Second, it argues that Arena ignored Warlock's many requests for reasonable assistance with converting its Series H preferred shares to common shares without any legitimate explanation.

Turning to the first duty, Arena argues that it unwound the transaction based on the Notice of Conversion from October 2021 because its securities counsel, BakerHostetler, noticed that Warlock's conversion of the Series H Preferred shares violated the Beneficial Ownership Limitation in the Series H Designation. This was because the conversion caused Warlock's ownership of Arena's common stock to exceed the 4.99% maximum. As of July 21, 2021, Warlock owned 11.31% of Arena's common stock (NYSCEF Doc. No. 118). In Arena's S-1 amendment filed November 19, 2021, Warlock owned 11.27% of Arena's common stock, not

[* 17]

including the shares to be issued upon conversion of the Series H Preferred stock from the October 2021 Notice of Conversion (NYSCEF Doc. Nos. 130, 144). Because Warlock could not have completed this conversion without violating the Beneficial Ownership Limitation in the Series H Designation, Arena's unwinding of the transaction was not arbitrary or in bad faith.

With respect to the second duty, Arena argues that it was responsive and provided Warlock with all of the information and documents necessary to complete the conversion. On December 31, 2020, Robert Scott ("Scott") of Arena informed Petzel that the Series H shares do not convert automatically (NYSCEF Doc. No. 139). Scott also notified Petzel that, in order to convert the Series H shares, Warlock would need to send a conversion notice and waiver for the blocker provisions in the Certificate of Designation for the portion of the conversion that would exceed 5% (*id.*). On October 7, 2021, Arena informed Warlock that it intended to file a resale registration statement with the SEC, that Warlock would need to complete the Selling Stockholder Questionnaire if it would like its registerable securities to be registered as part of the Registration Statement, and that Warlock's Series H shares can be converted by completing the conversion notice (NYSCEF Doc. No. 123). Warlock completed the notice of conversion in October 2021, but this transaction was unwound in January 2022 because it violated the blocker provisions (NYSCEF Doc. Nos. 144, 318).

In October 2022, Young asked Arena about the share classes and amounts of Warlock's shares (NYSCEF Doc. No. 152). She also inquired about other investors converting and the state of Warlock's Series H conversion (*id.*). Doug of Arena looped in Bassman and offered to help (*id.*). In January of 2023, Warlock notified Arena of their intent to convert, and Arena provided them with the proper form to use (NYSCEF Doc. No. 158-159). Young reached out Fenster on January 30 and 31, 2023 for assistance with the form (NYSCEF Doc. No. 161). On February 2,

[* 18]

2023, Fenster brought the blocker to Young's attention, informed her that Warlock could waive the blocker as the owner of the shares, and offered the set up a call to discuss the blocker and any potential changes to the Notice of Conversion (NYSCEF Doc. No. 161). Arena and Warlock set up a call for February 15, 2023 to discuss the conversion (NYSCEF Doc. No. 166). The following day, Fenster asked Young if she needed another copy of the conversion form and if she had any questions (NYSCEF Doc. No. 167). On March 23, 2023, Fenster checked in with Young about the conversion because she had not heard back following the February 15, 2023 call (NYSCEF Doc. No. 168). After receiving no further communication from Warlock, on August 9, 2023, Arena informed Warlock that the Series H shares would mandatorily convert on August 10, 2023 (NYSCEF Doc. No. 170). It is clear that Arena made their best efforts to assist Warlock with the conversion until Warlock abandoned the process and the mandatory conversion took place.

Considering these facts, there was no breach of the implied covenant of good faith. In the context of the agreement, Arena had a duty to assist Warlock with the stock conversion, and they acted in accordance with that duty. During the unwound conversion, Arena was responsive. Arena unwound the conversion because it violated the Series H Designation. Because the implied covenant cannot be used to "override the express terms of the contract," Arena unwinding the conversion cannot be a violation of the implied covenant of good faith and fair dealing (see *Kuroda*, 971 A2d at 888). Further, Arena's conduct after unwinding the conversion is not indicative of a breach of the implied covenant. Arena was responsive from the time that Warlock reengaged with respect to the Series H conversion until the ultimate mandatory conversion. Accordingly, Warlock's claim for the beach of the covenant of good faith and fair dealing as to the preferred shares is dismissed.

655322/2023   Warlock Partners, LLC vs. The Arena Group Holdings, Inc. et al                    Page 19 of 21
Motion No. 005

19 of 21

[* 19]

## V.    Attorney's Fees

As an initial point, in accordance with New York's choice of law rules, "the availability of attorney's fees should be considered procedural" (*Bensen v American Ultramar Ltd.*, 1997 WL 317343, \*13, 1997 US Dist LEXIS 8196, \*45 [SD NY June 12, 1997 No 92 Civ 4420 (KMW) (NRB)]). Under New York law, parties usually are not responsible for attorney's fees (*Sage Sys., Inc. v Liss*, 39 NY3d 27, 29 [2022]).  However, parties may contract around this rule by including an express fee-shifting provision in the agreement (*id.* at 33). The SPA and Series H Designation both provide that the prevailing party is entitled to attorney's fees and other costs and expenses associated with the action or proceeding (NYSCEF Doc. Nos. 117, 138). Under New York Law, the "to 'prevail,' the party seeking attorneys' fees must be successful on the 'central relief sought'" (*49 E. Owners Corp. v 825 Broadway Realty, LLC*, 224 AD3d 493, 493 [1st Dept 2024]). To determine the "central relief sought," the Court considers "the true scope of the dispute litigated, followed by a comparison of what was achieved within that scope" (*id.*). Neither party is considered the prevailing party when "the outcome of litigation is mixed and the relief awarded is not substantially favorable to either party" (*id.*). Here, the true scope of the dispute included both Warlock's claims under the Amended Complaint and Arena's counterclaims, but at this point in the litigation only Warlock's claim for breach of covenant of good faith and fair dealing with respect to the common shares remains. Therefore, Arena has not yet established that it is the prevailing party, and awarding attorneys' fees would be premature at this stage.

Accordingly, it is

ORDERED that Defendant's motion for summary judgment is granted to the extent of dismissing Plaintiff's cause of action for breach of the covenant of good faith and fair dealing as to the preferred shares; and it is further

ORDERED that these claims are severed and dismissed; and it is further

ORDERED that the rest of the motion, which seeks dismissal of Plaintiff's cause of action for breach of the covenant of good faith and fair dealing as to the common shares, is denied, and the claim remains active; and it is further

ORDERED that plaintiff shall file its note of issue within 5 days of the e-filed date of this decision and order; and it is further

ORDERED that the parties shall appear for a pre-trial conference on March 19, 2026 at 10:30 a.m. over Microsoft Teams.

| 3/6/2026 | | | | |
|---|---|---|---|---|
| **DATE** | | | **MELISSA A. CRANE, J.S.C.** | |

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | GRANTED | ☐ DENIED | X GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

655322/2023   Warlock Partners, LLC vs. The Arena Group Holdings, Inc. et al
Motion No. 005

Page 21 of 21